(No. 86-CC-3577–)

PATRICK POWELL, Administrator of the Estate of
MICHAEL POWELL, Deceased, and PATRICK L. POWELL,
JEAN M. POWELL, THOMAS P. POWELL, NANCY J. POWELL,
JAMES L. POWELL, and WILLIAM A. POWELL, Claimants, v.
THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 17, 1996.*

O'CALLAGHAN & WALLER, for Claimants.

JIM RYAN, Attorney General (DIANN K. MARSALEK, Assistant Attorney General, of counsel), for Respondent.

## OPINION

PATCHETT, J.

This is a claim arising under section 8 of the Court of Claims Act, 705 ILCS 505/8. It is a wrongful death claim involving the death of Michael Powell.

On June 29, 1985, Michael Powell, 19 years of age, was a passenger in a motor vehicle being operated by Darrell L. Holmes, age 21 years. The car was proceeding in a northbound direction upon Illinois Route 78 approximately five miles north of Mt. Carroll, Illinois. Michael Powell was last seen by his father, Patrick Powell, on June 28, 1985, when he left home to assist Darrell L. Holmes in the building of a garage on a farm in Stockton, Illinois. Thomas Holmes, father of Darrell L. Holmes, testified at the coroner's inquest that both Darrell L. Holmes and Michael Powell had been pouring a foundation for a garage on the Holmes' farm, two miles north of the accident scene. The boys had changed clothes and left the

farm at approximately 9:30 p.m. on the night of June 28, 1985, to go to either Thompson, Illinois, or Clinton, Illinois. The boys never returned.

The Holmes' vehicle was found on June 29, 1985, at 3:10 p.m. by Deputy Sheriff Mike Weber. Both Holmes and Powell were dead. Rigor mortis had already set in for both occupants.

Deputy Weber testified that the vehicle left the roadway prior to the guard rail at the curve on Route 78. The time of the accident was unknown, but the motor of the vehicle was cold when he discovered it. The weather had been warm and sunny. The car traveled straight off the curve, a distance on the shoulder of the roadway, down an incline, and into trees which had broken down over the car. The car landed approximately 12 feet from the roadway, which included a six-foot earth shoulder. There was one faint scuff mark on the edge of the roadway, but not enough to obtain a drag factor to indicate speed. Photographs were taken of the scene as the rescue squad arrived. There were no eyewitnesses. No one knew anything about the activities of Holmes or Powell immediately prior to the accident.

The boys were pronounced dead at the scene by the coroner. Blood samples were drawn on both decedents. Blood levels indicated alcohol in both Holmes and Powell.

Death was instantaneous for both Holmes and Powell. Holmes died of a massive skull fracture, and Powell died of massive leg, internal, chest, and stomach injuries. The coroner's jury determined that both deaths were accidental but recommended that the guard rail be extended on Route 78 at the scene of the accident.

The Powells instituted a lawsuit against the estate of Darrell L. Holmes. This lawsuit was settled for $50,000,

the amount of the available insurance coverage. The Powells had exhausted all other remedies prior to filing this lawsuit.

The Claimants herein, Patrick Powell and Jean Powell, the parents, brothers, Thomas, James, and William Powell, and a sister, Nancy Powell, proceeded with this claim for wrongful death as a result of alleged negligence on the part of the Department of Transportation.

The Powells produced testimony from Robert Lippman, a civil engineer and an expert in accident reconstruction. Lippman concluded that the approximate cause of the accident was a surprise factor from the lack of positive guidance and delineation on the roadway. Lippman compared five curves on the roadway in question. This included the curve at the accident site and the four preceding curves. Lippman identified the accident site as curve #5 and testified that curve #3 was very similar. He noted that curves #3 and #5 had the same radius and concluded that they should have had the same speed limits and advisory signs.

Lippman stated that curve #3 had a speed limit of 40 miles per hour as compared to curve #5's speed limit of 45 miles per hour. Curve #3 had 13 chevrons, which are black and yellow signs placed at the outer edge of the curve. Curve #5 had no delineators. Lippman therefore concluded that the driver had a reasonable expectation of consistency in the roadway. He concluded that a lack of positive guidance and increased advisory speed resulted in an unsafe roadway that created an element of surprise. This caused the driver to miss the curve.

Lippman further testified that the tree struck by the vehicle was approximately 12 feet from the roadway. He testified that the State should have removed the tree,

thereby providing an area of safe recovery of at least 18 to 30 feet. Lippman concluded that the physical evidence indicated that the driver was not impaired at the time of the accident. He testified that the physical evidence of crossed tire tracks indicated that the driver was attempting to return to the roadway after missing the curve. Lippman concluded that the driver's actions were entirely consistent with normal reaction times. Lippman testified that he did not reach a conclusion as to the speed the vehicle was traveling prior to the accident. He disputed the conclusion of the Respondent's expert that the vehicle was traveling at 89 miles per hour. Lippman stated that this conclusion was not supported by the evidence, and that a vehicle traveling at that speed would have flipped over and knocked down the tree it struck.

The Respondent produced evidence from a reconstruction consultant. The consultant, Terry Shanafelt, a former State trooper, concluded that the subject vehicle was traveling at 89 miles per hour when the brakes were applied. He further concluded that the vehicle began to rotate counterclockwise and continued to skid an additional 84 feet down the shoulder. Shanafelt's conclusion was that, at the end of the skid, the vehicle's right tires dug into the turf and the vehicle vaulted and became airborne for 53 feet until the right portion of the driver's door impacted the tree in question. Shanafelt believed the vehicle was traveling about 71 miles per hour at the time of the impact.

Shanafelt further noted that the roadway had the proper signs. He also concluded that there was no evidence of roadway defect and no documented history of accidents in the area for five years prior to the incident. He noted the driver's excessive speed and blood alcohol level. Shanafelt concluded that the accident was the result of the driver's negligence.

The Respondent called Ronald Kucharik, chief toxicologist for the Illinois State Police Lab Division. In 1985, he was working at Great Lakes Forensic Laboratory doing contract work for the State of Illinois. Kucharik personally performed an analysis of the blood samples of Holmes and Powell. He indicated that the test demonstrated that Darrell L. Holmes had a blood alcohol concentration of 0.152%. The legal limit for operating a motor vehicle was 0.10%.

The Respondent called John Wegmeyer, a studies and plans engineer for the Illinois Department of Transportation. Mr. Wegmeyer testified that he initiated an investigation of the accident site. He determined that the advisory speed at curve #5 northbound was 45 miles per hour, but the advisory speed at curve #5 southbound was 40 miles per hour. He determined the advisory speed at curve #3, as indicated earlier, to be 40 miles per hour in each direction. His results confirmed the findings of a study of advisory speeds done on those curves in 1980. Wegmeyer testified that curves #3 and #5 are similar and that they have the same radius or degree of curvature. They are also significantly different because they have a different length and depth of the angle. He stated that the differences between the curves accounts for the five mile-per-hour difference between the posted advisory speed.

Wegmeyer also concluded that all the advance warning signs at the curve were properly placed, met all requirements, and were consistent with the other signing along the entire route. He testified that there was sufficient positive guidance in advance of curve #5 and no apparent necessity to extend the guard rail at that point. He testified that the tree struck by the vehicle was not in the clear zone.

One allegation of purported negligence by the State was a failure to remove trees adjacent to the highway. The Claimants allege this failed to create a safe recovery area as required. Mr. Wegmeyer's testimony established that the applicable standard at the time of the accident required a ten-foot clearance zone at the location of the accident. The current standard is 18 feet. Wegmeyer clearly testified that the tree was not in the clear zone which existed at the time of the accident.

This Court concluded in *Wilson v. State* (1989), 41 Ill. Ct. Cl. 50, 55, that the State had no legal duty to remove a tree that was outside the ten-foot clearance zone. This Court held as follows:

"The State was within compliance of recommended standards. There is no duty upon the State to clear every possible source of injury from areas in the more remote proximity of the roadway. A legal duty requires more than the possibility of occurrence, and the State, like any other person is charged with such a duty only when harm is legally foreseeable. The issues of 'foreseeability' and 'duty' involve a myriad of factors, including the magnitude of the risk involved, the burden of requiring the State to guard against the risk, and consequences of placing such a burden on the State * * * The fact that removal occurred after the accident, for unknown reasons, is not evidence of negligence." *Wilson*, at 55-56.

In the present case, there was no evidence presented that the tree was inside the recommended clearance zone. For the reasons stated, this Court concludes that the Respondent did not have a legal duty to remove the tree in question.

The Claimants also contend that the Respondent was negligent for failing to mark and maintain the roadway at the scene of the accident. This Court has consistently held that the State of Illinois is chargeable only with designing and maintaining roads in a reasonably safe condition for the purpose for which they are intended. Claimants must, in order to prevail, prove by a preponderance of the evidence that the Respondent breached its

duty and that the breach proximately caused the injuries to the Claimant. *Calvert and Williams v. State* (1985), 38 Ill. Ct. Cl. 104; *Louis v. State* (1983), 35 Ill. Ct. Cl. 741.

In *Slagel v. State* (1990), 42 Ill. Ct. Cl. 28, 32, the Claimant alleged that a vehicle accident was proximately caused by a missing sign which would have warned the driver of an approaching curve. The Court found that roadway was hilly and contained many curves. Other warnings or markings existed preceding the accident site. The Court found that the absence of the sign in question would not have created a hazard for a driver exercising due care and caution. Therefore, the absence of the sign was not the proximate cause of the accident. *Slagel*, at 32.

In this case, signs were appropriate and complied with mandatory sign provisions. It appears clear that the driver could have driven through the curve without incident if he had exercised due care, was not under the influence of alcohol, and not driving at an excessive speed. For the reasons stated, we have concluded that the Claimants have failed to meet their burden of proof that the State was negligent in this case. We therefore deny this claim.