(No. 92-CC-0333, 92-CC-0334, cons.—)

WILLIAM SCIVALLY and JUDY THOMPSON, Claimants, *v.*
THE STATE OF ILLINOIS, Respondent.

*Order filed May 9, 2000.*

VELLA, SPARKMAN & ALTAMORE, P.C. (JAMES D. SPARK-
MAN, of counsel), for Claimants.

JIM E. RYAN, Attorney General (TOMAS A. RAMIREZ,
Assistant Attorney General, of counsel), for Respondent.

## ORDER

MITCHELL, J.

Mark Scivally, age 13, and Jonathan Jackson, age 14,
died on August 24, 1989, in the City of Rockford. They
had been swimming in a drainage ditch under the Kish-
waukee Street Bridge which had a substructure with a
box culvert on the west side and piers on the east side.
Present with them before they drowned was Jonathan's
brother, Raymond Jackson. Mark Scivally and Raymond
Jackson were best of friends.

The bridge in question is one of 112 bridges located
in the City of Rockford. Located under the bridge is a
box culvert through which water runs from a concrete
drainage ditch from east to west. The drainage ditch ends
underneath the bridge. When there was rainfall or melt-
ing of snow, the water flowing from the drainage ditch

would increase. Through the testimony of the young men who had utilized this area as a swimming and fishing hole, it is apparent that the flow from the box culvert into the ditch created enough force so that scouring occurred underneath the box culvert. Scour is defined as the movement of the riverbed as a result of the pressures of the water flow. In this case, a hole existed underneath the concrete box culvert large enough for children to swim into the hole and reach a point where the height of the concrete increased. There was an air pocket under the concrete and children would utilize the air pocket location as a hiding place. There is evidence in the record that this air pocket existed as early as the mid-1960s. The existence of this hole was known to many of the children of the neighborhood and was passed down from one age group to the next. There is even evidence that adults knew about the hole because they had utilized the stream area for swimming. On the date of the incident, Raymond Jackson and his best friend, Mark Scivally, were dropped off at the bridge area by Raymond's grandfather. It had been their intention to go fishing under the bridge. Raymond described this area as their playground, a place they went to often. Raymond's older brother, Jonathan, arrived separately and he convinced Mark to go swimming with him. Raymond thought the water was too cold for swimming and continued fishing. Raymond saw Mark and Jonathan disappear into the water at the location which leads to the air pocket as he continued to fish. Two other boys arrived, he talked to them for awhile, and when they left, 15 to 30 minutes had gone by, and his brother and his best friend were still under the concrete. Becoming a little concerned, Raymond approached the area on the box culvert from which he could stand over the entrance to the air pocket and he noticed two legs floating. He touched the legs and realized that something

had gone wrong. He ran to the closest commercial establishment and from there paramedics and police were called. The bodies of the two boys were found by the officials who responded, Mark partially out of the entranceway to the pocket of air and Jonathan still inside. Mark was pronounced dead at the scene and Jonathan died the next day. Raymond Jackson described the distance one had to swim underwater in order to reach the air pocket as only a couple of feet. He did not understand how his brother and friend had died, and there is no indication in the record of exactly what happened to the two boys once they went under the water. Raymond described the air pocket as being in the exact same condition when he saw it weeks earlier.

The intended use of the bridge and box culvert in question was for the transportation of traffic, not to aid in recreational purposes for the people of the area. Incidental to the construction of the box culvert, the process of scour had constructed a hole in the river which was discovered by the children in the neighborhood. This hole turned into a deadly trap for the children of the Claimants in August of 1989, but the State had no knowledge of the existence of this hole, whether it is considered a defect or not, since scour is a natural process in a body of water that is flowing. It must be remembered that the inspections conducted by the State were carried out so that the traffic on the bridge would not be compromised. The State employees who testified had responsibility for the bridge, not the stream below the bridge. There was no evidence that the State was aware that the drainage channel in question was being used as a swimming facility by the children in the neighborhood, a fact which is confirmed by that same lack of notice to the parents in the neighborhood. A danger which is as well concealed as this scour hole was, could not be seen during the periodic inspections by the State employees. There is no legal duty

upon the State to remove every possible source of injury from areas in the more remote proximity of the State-controlled property. A legal duty requires more than the possibility of an occurrence. The State is charged with a duty only when the harm is foreseeable. (*Powell v. State* (1996), 48 Ill. Ct. Cl. 111.) In this scenario, the State exercised reasonable care in the maintenance and inspection of the bridge and box culvert. That the inspections did not detect the scour is not proof of negligence. Claimants are unable to produce evidence that the State had actual or constructive knowledge of the condition which resulted in the deaths of these children.

Therefore, the claims are denied.